IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BOBBI JO GINN,** | Case Number 1:13cv2130 |
| Plaintiff, | Judge Patricia A. Gaughan |
| v. | Magistrate Judge James R. Knepp, II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | REPORT AND RECOMENDATION |

### INTRODUCTION

Plaintiff Bobbi Jo Ginn seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated September 26, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on February 8, 2010 alleging disability since October 15, 2005 due to depression, low blood pressure, migraines, blackouts, and anxiety. (Tr. 19, 147, 155, 183). Her claims were denied initially and on reconsideration. (Tr. 79, 82, 88, 95). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 102). At the hearing Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 41). On February 14, 2012, the ALJ concluded Plaintiff was not disabled. (Tr. 14). Plaintiff's request for appeal was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr.

1, 11); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On September 26, 2013, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Plaintiff was 35 years old at the time of her alleged onset date. (Tr. 30). She has a high school education and prior relevant work experience as gas station cashier, receptionist, and plastics worker. (Tr. 29-30, 70). In 2008, Plaintiff testified she worked fifteen hours per week at her brother's bait store but left after she physically "went after" a coworker. (Tr. 50-51, 57-58). In 2010, Plaintiff worked fifteen hours per week as a security guard but left because of low blood pressure and blackouts. (Tr. 51).

Plaintiff lived alone in a one-bedroom apartment. (Tr. 45). With regard to daily activity, she maintained personal hygiene, used Facebook, watched television, visited with family, and saw her boyfriend every night. (Tr. 47-48, 211). She drove and grocery shopped, at times with assistance from her parents. (Tr. 47, 55-56, 63). When she shopped by herself, Plaintiff used a list so she could get in and out quickly. (Tr. 63).

At the hearing, Plaintiff said she could not keep her apartment clean because she would lose concentration or "get real antsy". (Tr. 45). She said she ate once daily and only prepared simple food. (Tr. 46). Plaintiff spent most of the day in her apartment because she did not like big crowds. (Tr. 46). Plaintiff said she previously left a bar where her friend's band was playing within half an hour because of anxiety. (Tr. 48). Due to confusion relating to her insurance coverage, Plaintiff said she had not received mental health treatment. (Tr. 49-50, 61). However, her family doctor prescribed mental health drugs and Plaintiff said Xanax would "sometimes" work. (Tr. 61-64). She said her migraines caused debilitating pain and may be induced by stress,

2

particularly financial stress or stress from occasionally caring for her grandson. (Tr. 66-67).

Plaintiff completed a function report on April 26, 2010, where she indicated she spent her days doing "nothing", sleeping off and on, grocery shopping occasionally, watching television, and visiting others. (Tr. 210). She did not need reminders to take medication and was able to cook complete meals and make sandwiches. (Tr. 211). Plaintiff was able to complete household chores, drive, shop, leave the house a few times per week, pay bills, handle a savings account, and use a checkbook or money orders. (Tr. 213). Plaintiff averred she could not work because she did not know when she would black out and required someone to be around her. (Tr. 213). She could pay attention for a "long time", follow written and spoken instructions, and get along with authority figures. (Tr. 214). Plaintiff had a short temper and did not think she could handle stress well. (Tr. 215).

*Relevant Medical Evidence*

Plaintiff generally challenges only the ALJ's conclusions regarding her mental limitations (Doc. 13) and therefore waives any claims about the determinations of her physical impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Specifically, Plaintiff challenges only the ALJ's treatment of Dr. Namey's 2012 opinion and whether the residual functional capacity ("RFC"), finding only nonexertional impairments, is supported by substantial evidence. (Docs. 13, 16). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments.

Plaintiff treated with Michael Namey, D.O., for several years prior to her alleged onset date. (Tr. 531). Generally during these visits, Plaintiff complained of headache, chest pain, cough, shortness of breath, depression, light headedness, and tremors. (Tr. 438-46, 531).

On July 11, 2008, Plaintiff reported symptoms of depression and anxiety with crying and angry mood swings. (Tr. 433). At a follow-up visit two weeks later, Dr. Namey indicated Plaintiff's mood swings had improved but noted she had trouble sleeping. (Tr. 433). He adjusted her medications. (Tr. 433).

On March 19, 2009, Plaintiff complained of anxiety and said her husband had been laid off. (Tr. 328). Her medications were adjusted and she was to return in three weeks. (Tr. 328). On April 2, 2009, Plaintiff complained of cough, sinus, and throat problems but said she was sleeping better and having less anxiety. (Tr. 327). Dr. Namey refilled her medications. (Tr. 327).

In July 2009, Plaintiff was feeling stressed out, grumpy, and not sleeping well. (Tr. 327). Her medications were adjusted and on September 8, 2009, they were refilled. (Tr. 327).

On September 28, 2009, Plaintiff told Dr. Namey she had been in a fight at a bachelorette party and had numerous bruises on her body. (Tr. 326). She did not complain of depression or anxiety at this time, nor did she so complain on December 31, 2009; January 15, 2010; February 2, 2010; or February 4, 2010. (Tr. 325-26).

Plaintiff requested a letter on April 1, 2010 stating she could not work by herself due to low blood pressure and blackouts; she did not complain of mental health problems. (Tr. 427).

On April 27, 2010, Plaintiff went to Dr. Namey crying and saying she was "losing it" due to stress and family issues. (Tr. 487). She had been off her anxiety medication due to cost and was restarted on Lexapro and Xanax. (Tr. 487).  She received refills on June 1, 2010. (Tr. 487).

Dr. Namey completed a physical examination and physical functional capacity assessment on August 7, 2010. (Tr. 653). There, he said Plaintiff's medical conditions included anxiety, depression, migraine, cephalgia, autonomic hypotension, adrenal insufficiency, and reactive airway disease. (Tr. 653). He observed a depressed mood and said Plaintiff's depression

4

had lasted for two years. (Tr. 653).

On September 28, 2010, Plaintiff complained of fatigue, cough, congestion, sore throat, sinus drainage, and epigastric discomfort; Dr. Namey noted her diagnoses included sinobronchitits, anxiety, and gastritis. (Tr. 685).

Plaintiff did not complain of depression or anxiety during visits to Dr. Namey on January 6, 2011; February 3, 2011; June 14, 2011; July 7, 2011; or July 8, 2011. (Tr. 677-78, 680, 682, 696, 700, 719). She went to the hospital on July 11, 2011, but similarly did not complain of depression or anxiety. (Tr. 708). At discharge, the treatment provider indicated Plaintiff took Lexapro daily and suffered from underlying depression. (Tr. 711).

Plaintiff returned to Dr. Namey on July 27, 2011, and complained of anxiety but denied depression and was alert and cooperative with a normal mood, affect, attention span, and level of concentration. (Tr. 674-75). She returned to Dr. Namey on August 3, 2011 and January 18, 2012 without complaints of anxiety or depression. (Tr. 671, 687, 691, 752).

*State Agency Medical and Psychological Assessments*

On June 7, 2010, state consultative examiner Richard C. Halas, M.A., examined Plaintiff and completed a psychological report. (Tr. 472). Plaintiff was separated from her husband and living alone. (Tr. 472). She had no history of community problems and denied inpatient psychiatric treatment but said she had a history of depression and anxiety. (Tr. 472-73). She arrived on time to the appointment and presented in a neat, well-kempt manner. (Tr. 473). She was cooperative and sullen at times, and had a flat, hesitant, and tentative presentation. (Tr. 473). Mr. Halas said Plaintiff tended to minimize or deny problems. (Tr. 473). Plaintiff reported crying spells and was tearful at times. (Tr. 474). Her mood reflected upon depression and she admitted to feelings of hopelessness, helplessness, and worthlessness. (Tr. 474). She showed "extremely

5

high" levels of anxiety and her hands were damp and trembling. (Tr. 474). She reported feeling claustrophobic. (Tr. 474). Plaintiff described her daily activities to Mr. Halas, saying she did all the cooking, cleaning, shopping, and laundry; was able to drive; watched television and movies; and had many friends. (Tr. 473). She said her blackouts and low blood pressure kept her from working. (Tr. 475).

Mr. Halas concluded Plaintiff's mental ability to follow through with simple instructions or directions was intact and not impaired. (Tr. 475). According to Mr. Halas, she had mild impairments in abilities to maintain attention and concentration to perform simple, repetitive tasks and marked impairments in abilities to relate to others and withstand the stresses and pressures associated with day-to-day work activity. (Tr. 475).

On June 15, 2010, state agency medical consultant Kristen Haskins, Psy.D., reviewed Plaintiff's records and determined she was moderately limited in abilities to sustain an ordinary routine without special supervision, sustain concentration and persistence, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 467-68). Dr. Haskins found there was either no evidence of limitation or Plaintiff was not significantly limited in all remaining areas. (Tr. 467-68). She concluded Plaintiff could follow simple and multi-step instructions, maintain an ordinary routine without special supervision, and was capable of superficial intermittent social interaction with others in a setting without frequent changes, strict production quotas, or fast pace. (Tr. 469).

Catherine Flynn, Psy.D., affirmed Dr. Haskins' findings as written on October 21, 2010. (Tr. 657).

James Cozy, M.D., completed a mental functional capacity assessment on February 8,

6

2011, on behalf of the Ohio Department of Job and Family Services. (Tr. 667). It is not clear from the record whether Dr. Cozy examined Plaintiff. He opined she had no limitation in all areas, except she was extremely limited in abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 667). She was markedly limited in abilities to interact with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral concerns, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (Tr. 667). Dr. Cozy added that Plaintiff had been unemployed since October 2010, had low blood pressure, could black out, experienced depression and panic attacks, did not sleep, and was easily agitated. (Tr. 668).

*The ALJ's Decision*

According to the ALJ, Plaintiff had severe impairments of depression, anxiety, and migraines. (Tr. 22). However, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23). Next, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels but limited to work involving simple routine tasks, performed at a normal pace, with only occasional contact with others but not as a team member, and with occasional changes in the work setting. (Tr. 25). The ALJ determined Plaintiff was able to perform past relevant work as a plastics worker and therefore, was not disabled. (Tr. 29).

7

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially

>
> limits an individual's ability to perform basic work activities?
>
> 3. Does the severe impairment meet one of the listed impairments?
>
> 4. What is claimant's RFC and can she perform past relevant work?
>
> 5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Initially, Plaintiff argued the ALJ failed to mention the February 14, 2012 opinion of treating physician Dr. Namey, which was rendered on the same date as the ALJ's decision. (Doc. 13, at 19-20; Tr. 14). However, after the Commissioner pointed out that the opinion was not included in the record before the ALJ and Plaintiff failed to move for remand based on new and material evidence, Plaintiff abandoned this argument. (Doc. 16, at 1). Thus, Plaintiff's first argument should be rejected.

Second, Plaintiff argues the RFC is unsupported by substantial evidence because "it did not accurately describe [Plaintiff's] abilities since the ALJ did not account for inconsistencies between the [RFC] finding and the medical opinions that he credits as the basis of his finding".

9

(Doc. 13, at 19-22). Specifically, Plaintiff challenges the ALJ's treatment of Dr. Haskins' opinion. (Doc. 13, at 22).

However, as Plaintiff concedes in her reply, the fact that the ALJ gave significant weight to Dr. Haskins' opinion without adopting it verbatim does not automatically indicate the ALJ's RFC, and subsequent step five determination, is unsupported by substantial evidence. (Doc. 16, at 3); *Rahrig v. Comm'r of SSA*, 2013 U.S. Dist. LEXIS 108117, at *5 (N.D. Ohio) ("even where an ALJ affords considerable and substantial weight to a medical opinion, there is no rule requiring an ALJ to incorporate verbatim into the RFC every finding contained in that opinion") (citing *Earls v. Comm'r of Soc. Sec.*, 2011 WL 3652435, * 5 (N.D. Ohio)). Therefore, the ALJ did not err by failing to wholly adopt Dr. Haskins' opinion.

Next, Plaintiff takes issue with the ALJ's failure to include certain limitations in the RFC; particularly Dr. Haskins' finding that Plaintiff was capable of only "superficial intermittent social interaction with others in a setting without frequent changes, strict production, quotas, or fast pace" and Plaintiff's abilities with respect to her "inability to perform work involving rapid changes." (Docs. 13 at 22; 16, at 2-3; Tr. 469).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545; 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. §§ 404.1529; 416.929. An ALJ must also consider and weigh medical opinions. §§ 404.1527; 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

10

Here, the ALJ found Plaintiff had the RFC to:

[P]erform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] requires work involving simple routine tasks, performed at a normal pace, with only occasional contact with others but not as a team member, and with occasional changes in the work setting.

(Tr. 25).

It is unclear whether there is any real distinction between the above-stated RFC and Plaintiff's position that the ALJ should have included "superficial intermittent social interaction with others in a setting without frequent changes, strict production, quotas, or fast pace" and an "inability to perform work involving rapid changes." (Docs. 13, at 22; 16, at 2-3). But, semantics aside, the ALJ's finding is supported by substantial evidence.

To this end, the ALJ found Plaintiff had a mild restriction in activities of daily living. (Tr. 23). He noted Plaintiff lived by herself, prepared one simple meal per day, took care of her own hygiene, and had a driver's license. (Tr. 23-24, 45, 48, 55-56, 211). The ALJ also considered Plaintiff's function report, where she indicated she had no problems with personal care, needed no reminders to care for her hygiene or take medication, did household chores independently and without encouragement, and shopped for groceries and household items. (Tr. 24, 210-11, 213).

The ALJ determined Plaintiff had moderate difficulties in social functioning, noting she had 50 Facebook friends, visited with her mother, sister-in-law, and younger son, and had a boyfriend who came over every evening. (Tr. 24, 47-48, 211, 473). The ALJ recalled Plaintiff's testimony that she became shaky around crowds and had trouble getting along with coworkers and customers. (Tr. 24, 46, 50-51, 57-58). He compared her testimony to her function report where she indicated she spent less time with others than she used to, got along "ok" with authority figures, and never lost a job because of problems getting along with others. (Tr. 24, 210, 214-15). The ALJ also considered Plaintiff's comment that she had a short temper and did

11

not handle stress well. (Tr. 24, 215).

Next, the ALJ found Plaintiff had only moderate difficulties with regard to concentration, persistence, or pace. (Tr. 24). To this end, Plaintiff testified she could not clean her house because she lost concentration but did not report any problems watching television or movies. (Tr. 24, 45, 48). Further, in her function report, Plaintiff said she could follow instructions well, pay attention for a "long time", and had no problems finishing what she started. (Tr. 24, 214).

The ALJ also considered objective evidence and treatment records in order to evaluate Plaintiff's mental impairments. (Tr. 27). He noted Plaintiff's treatment record failed to reveal the type of significant clinical and laboratory abnormalities one would expect to find if she were disabled. (Tr. 27). Indeed, although Plaintiff saw her primary care provider for mental health issues and treated with medication, her complaints were generally related to outside stressors and did not reflect any acute mental issues. (Tr. 27). For example, as the ALJ recalled, in March 2009, Plaintiff said she was having anxiety because her husband was being laid off. (Tr. 27, 328). In July 2009, she was merely "stressed out" and grumpy. (Tr. 27, 327). In April 2010, Plaintiff was visibly upset and crying due to family problems but denied panic attack symptoms and suicidal ideation. (Tr. 27, 487). Moreover, Plaintiff had not sought treatment from a mental health professional and she provided conflicting statements regarding her mental health symptoms; saying she did not like to be around people yet testifying her boyfriend of a year came by every night. (Tr. 27, 46, 48).

To formulate the RFC, the ALJ gave great weight to Dr. Haskins' opinion. (Tr. 27). There, Dr. Haskins determined Plaintiff had the RFC to follow simple and multi-step instructions, maintain an ordinary routine without special supervision, and was capable of superficial intermittent social interaction with others in a setting without frequent changes, strict

production quotas, or fast pace. (Tr. 469).

Further, the ALJ found Mr. Halas' psychological consultative examination undermined Plaintiff's allegations as to the debilitating nature of her impairments. (Tr. 27). To this end, Mr. Halas found Plaintiff had poor eye contact, was sullen, and exhibited high levels of anxiety yet noted her overall presentation was within normal limits and she did not show specific problems with hallucinations, delusions, paranoia, or misinterpretations. (Tr. 27, 472-75). Further, her cognitive functioning was good and she had many friends. (Tr. 27, 472-75).

The ALJ gave great weight to Mr. Halas' opinion, except for his finding that Plaintiff was markedly impaired in ability to withstand stress and pressures related to others. (Tr. 28). As support, the ALJ reasoned Plaintiff denied any problems with concentration and said she could understand and follow directions, her activities of daily living were essentially within normal limits, and she related reasonably well to Dr. Halas and other physicians. (Tr. 28). The ALJ also said Plaintiff admitted to having a boyfriend and many friends. (Tr. 28).

The ALJ rejected the opinion of Dr. Cozy. (Tr. 28). In affording little weight to Dr. Cozy's opinion, the ALJ indicated it was not clear whether Dr. Cozy ever treated Plaintiff or upon what evidence his opinion was based. (Tr. 28, 677). Additionally, Dr. Cozy's opinion was inconsistent with the record and Plaintiff's own testimony. (Tr. 28).

Upon review, the ALJ supported the RFC finding with substantial evidence, including treatment records, opinion evidence, Plaintiff's testimony and credibility, and function reports. (Tr. 29). Therefore, Plaintiff's argument to the contrary should be found not well-taken. *See*, *Jones*, 336 F.3d at 477 (the Court must affirm even were substantial evidence supports an alternative result).

13

**CONCLUSION AND RECOMMENDATION**

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                                 s/James R. Knepp II
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).